IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**AFRICAN-AMERICAN CULTURAL**
**ASSOCIATION, INC., a New Mexico non-**
**profit corporation, LOVIE McGEE,**
**LENNIE CARDWELL, CURLEY**
**SHEFFIELD-HALL, TAMRA DORSEY,**
**DORIS FOSTER, AMY McGEE, JaRON**
**McGEE, JOHN McGEE, SYLVIA ORTIZ,**
**VAN SANDERS, RAYMOND SMITH,**
**LEON WARD, and LYNNETE WILLIAMS,**
**and all similarly situated individuals,**

       Plaintiffs,

v.                                                                          No. CIV 99-1421 BB/WWD

**DAVIDSON HOTEL COMPANY and**
**JOHN DOE(S) 1-4,**

       Defendants.


**MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT**

      THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment

(Doc. 68), filed January 29, 2001. The Court has reviewed the parties' submissions and the relevant

authorities, and, for the reasons set forth below, finds that Defendants' motion should be DENIED.

**I.**
**BACKGROUND**

      Plaintiff African-American Cultural Association ("AACA") and board members of that

association bring this civil rights action pursuant to 42 U.S.C. §§ 1981 and 1985(3). Plaintiffs allege

that Defendants intentionally discriminated against them on the basis of race by canceling Plaintiffs'

New Year's Eve reservation at a local Radisson hotel. In addition, Plaintiffs bring a pendent claim against the Defendants for breach of contract.

Plaintiff AACA is a non-profit corporation dedicated to the promotion of minority learning and African-American awareness. Davidson Hotel Company ("Davidson") manages the local Radisson hotel, which is owned by Carlisle Boulevard Hotel Associates, L.L.C. ("Carlisle").[1]

Plaintiffs allege that in early 1999, Plaintiff Lovie to the Defendants' Radisson hotel to inquire into booking the Grand Ballroom for the AACA's annual New Year's Eve benefit party. At that time, she was told that the Grand Ballroom was booked for New Year's Eve 1999 because the Radisson was hosting its own New Year's Eve party. However, a catering manager at a separate hotel called the Radisson on behalf of the AACA and was told by their catering manager, Sandra Knudsen, that the Radisson was in fact not booked up for New Year's Eve.

Ms. Knudsen was a catering manager whose position required her to book event business at the Radisson. Ms. Knudsen reported to the Director of Catering, who in turn reported to the Director of Sales, who reported to the General Manager of the local Radisson. John Nabos was the Director of Catering from March to May 1999; Colleen Kopack was the Director of Sales beginning in February 1999; and Zuly Rueda was the General Manager from mid-1998 to October 1999.

The parties agree that on March 19, 1999 Plaintiffs McGee and Lennie Cardwell met with Ms. Knudsen and reserved the Radisson Grand Ballroom and 34 sleeping rooms for December 31, 1999. At this meeting, Ms Knudsen discussed the dinner menu for the party, gave the Plaintiffs a business

---

[1]Plaintiff originally brought this action against current Defendants and Defendant Carlisle Boulevard Hotel Associates, L.L.C. Subsequent to the filing of this action, Plaintiffs and Defendants have jointly stipulated to Carlisle's dismissal. See Stipulated Dismissal of Carlisle Boulevard Hotel Associates, Inc. (Doc. 21), filed June 30, 2000.

card for a disc jockey, and repeatedly assured the Plaintiffs that the Grand Ballroom was indeed available and that there was no mistake. Therefore, Plaintiffs made a $200 deposit to Ms. Knudsen, hired a disc jockey, and sent out approximately 1,000 flyers announcing the New Year's Eve party. However, Ms. Knudsen's notes of this initial meeting with Plaintiff McGee state that "John [Nabos] said they [sic] hotel wasn't sure what they were going to do for [New Year's] Eve."

During May, 1999, Ms. Knudsen called Plaintiff McGee and told her, "I apologize for having to do this but I have to cancel your reservation for the New Year's Eve party." Plaintiffs contend that Ms Knudsen stated that her boss, the General Manager of the hotel, was angry that she had rented the Grand Ballroom to the AACA. Her boss thus instructed her to call the Plaintiffs, cancel their New Year's Eve reservation, and refund their deposit. No reason was given by Ms. Knudsen for the cancellation other than she was following her boss's instructions.

Approximately three days after the cancellation, Plaintiff McGee called Ms. Knudsen again to inquire as to why the reservation was canceled. Ms. Knudsen again stated that she could not or would not give the Plaintiffs a reason for the cancellation. Plaintiff McGee asked if it would do any good to talk to the General Manager, but was told that there would be no reconsideration by the General Manager. Again, Ms. Knudsen promised to promptly refund the $200 deposit. Plaintiff McGee called one more time approximately a week later and talked to Ms. Knudsen. Once again, she was promised that the deposit would be returned.

Following one of her phone conversations with Plaintiff McGee, Ms. Knudsen documented the conversation in a memo to Ms. Kopack. The memo states, "I explained to her [Plaintiff McGee] that I had made a mistake in booking this business and that I was very sorry. . . . She was not upset for us turning her away."

3

Plaintiffs allege that other individuals who are not African-Americans were told that the Grand Ballroom was available for New Year's Eve. Specifically, Plaintiffs claim to have called the Radisson on various occasions between May and October and were told that the Grand Ballroom was not booked and was available.

Furthermore, Sylvia Ortiz, an Hispanic member of the AACA, later was able to reserve the Grand Ballroom at the Radisson for New Year's Eve 1999. Ms. Ortiz testified that she met with a Radisson representative in October 1999 to determine the availability of the Grand Ballroom for a wedding on December 31, 1999. Ms. Ortiz actually went through with renting the Grand Ballroom, placed a deposit, and upon being advised that a written contract was required, executed a written contract. Ms. Ortiz never inquired about renting the Grand Ballroom for the AACA. Ultimately, Ms. Ortiz canceled her reservation of the Grand Ballroom in a letter to the Radisson dated October 29, 1999. The Grand Ballroom was not booked for New Year's Eve with any event.

Defendants allege that in 1998 the Radisson management staff began contemplating plans for New Year's Eve 1999 in anticipation of a large millennium celebration. After Ms. Kopack started working as Director of Sales in February 1999, she organized a committee to determine whether the Radisson should host its own party. This committee held numerous meetings in spring and summer 1999. Mr. Nabos, Ms. Kopack, and Ms. Rueda instructed the catering managers not to book a private group for New Year's Eve 1999 because the Radisson was contemplating hosting its own party. Based on this plan, hotel management had set projected revenues for New Year's Eve 1999 but would consider a private booking that could exceed those revenues.

Therefore, when Ms. Kopack learned that Ms. Knudsen had taken a reservation and deposit from the AACA for New Year's Eve 1999, she discussed the matter with Ms. Rueda. They agreed

that the reservation had to be canceled because the committee had yet to determine whether the Radisson would host its own party and the projected revenues for the AACA New Year's Eve party were insufficient to preempt a hotel-sponsored event. Defendants therefore allege that the decision to cancel the AACA's reservation was purely a business decision, and had nothing to do with the racial makeup of the AACA.

Plaintiffs filed this lawsuit in April 2000, asserting civil rights claims under 42 U.S.C. §§ 1981 and 1985(3). Plaintiffs also assert a pendent claim for breach of contract. Defendants have moved for summary judgment on each of Plaintiffs' claims.

## II.
## DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, the Court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that a reasonable jury could find in its favor. Id.

**B.      Motion to Strike Affidavit of Lovie McGee**

As a preliminary matter, Defendants have moved the Court to strike the affidavit of Lovie McGee for failure to comply with Fed. R. Civ. P. 56(e). "Under Fed. R. Civ. P. 56(e), only statements 'made on personal knowledge' will support a motion for summary judgment; statements of mere belief must be disregarded." <u>Tavery v. U.S.</u>, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (citing <u>Automatic Radio Mfg. Co. v. Hazeltine Research Inc.</u>, 339 U.S. 827, 831 (1950)). The statements contained in the affidavit of Lovie McGee are clearly made on personal knowledge.[2] The statements do not appear to be statements of mere belief; rather, McGee's statements appear to be predicated upon her own observation and recollection. Furthermore, "overly strict adherence to the demands of Rule 56(e) could lead to an undue amount of energy being devoted to 'qualifying' affidavits or to the precipitous granting of summary judgment when opposing affidavits are found to be unacceptable under the rule." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> vol. 10B, § 2738, 343 (3d ed., West 1998).

Defendants also contend that McGee's affidavit should be stricken because the affidavit merely repeats the allegations of the Second Amended Complaint.[3] However, Defendants have offered no support for this proposition. "Rule 56(e) . . . requires the nonmoving party to go beyond

---

[2]For example, paragraph one of Ms. McGee's affidavit states, "In early 1999, Plaintiff Lovie McGee . . . went to the Radisson on Carlisle to inquire into booking the Grand Ballroom for the AACA's annual fundraiser. . . . At that time, she was told that the Hotel was putting on their own New Year's Eve party and that the Grand Ballroom was booked up." This statement, as well as the statements that follow, are based upon Ms. McGee's own personal experiences in dealing with the Defendants. Therefore, the statements form the basis of an admissible affidavit. <u>Van Skiver v. United States</u>, 751 F.Supp. 1522 (D. Kan.), <u>aff'd</u> 952 F.2d 1241 (10th Cir. 1990), <u>cert. denied</u> 506 U.S. 828 (1992).

[3]In fact, Paragraphs 1 through 18 of the affidavit made by Lovie McGee are basically identical to Paragraphs 12 through 28 of the Second Amended Complaint.

the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' *designate* 'specific facts showing that there is a genuine issue for trial.'" Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). However, this does not mean that a Plaintiff should be punished for pleading with more specificity than is required. Plaintiff McGee has submitted an affidavit identifying specific evidence that is pertinent to the material issues; therefore, her affidavit should not be stricken for merely reciting the allegations of the Complaint. See Adams v. American Guaranty and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000); cf. Avery v. Norfolk & W. Ry Co., 52 F.R.D. 356 (N.D. Ohio 1971) (affidavit contained in pleading may be considered if it complies with rule).

Finally, Defendants contend that McGee's affidavit should be stricken on the grounds that Paragraphs 16 and 17 of the Affidavit are conclusory statements.[4] Specifically, the Defendants identify

---

[4]Specifically, Paragraphs 16 and 17 of the affidavit read as follows:

16. As a result of this *unlawful discriminatory practice* Plaintiff AACA has been damaged by the loss of its deposit to Defendant Radisson of $200.00 which has yet to be refunded and the funds required to print and mail approximately 1,000 flyers and retractions and the $250.00 deposit for the disc jockey as well as the money which the organization would have earned through the sale of tickets to the event as well as damage to the good will and reputation of the association. AACA has also been denied on *racially discriminatory grounds* the right to contract with Defendant Radisson and to have those who would promote AACA's goals associate with the organization and its Board of Directors and members at the party. (emphasis added).

17. As a result of this *unlawful discriminatory practice* the individually named Plaintiffs have lost the right to contract with Defendant Radisson for rooms, food and beverages and to use the Grand Ballroom, they have lost the ability to promote the goals of the AACA through the funds that AACA would have raised, they have lost the right to associate with members and friends of the AACA and its supporters on New Year's Eve at the Radisson and have suffered mental and emotional distress. (emphasis added).

the statements that the practices of Defendants were "unlawful and discriminatory" as conclusory. "[A]n affidavit is an appropriate vehicle to establish a fact for summary judgment purposes, the affidavit must set forth facts, not conclusory statements." BancOklahoma Mortg. Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1101 (10th Cir. 1999). Therefore, "summary judgments cannot be made to rest purely on conclusory statements, either in pleading or affidavit form." Morgan v. Willingham, 424 F.2d 200, 202 (10th Cir. 1970). The statements that the practices of Defendants were "unlawful and discriminatory" are conclusions of law and should not be considered in ruling on Defendants' motion for summary judgment. However, "[o]n a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest." Akin v. Q-L Investments, Inc., 959 F.2d 521, 531 (5th Cir. 1992). The remaining factual statements in the affidavit of Lovie McGee are appropriate for consideration on the Defendants' motion for summary judgment.

Therefore, Defendants' motion to strike the affidavit of Lovie McGee is denied.

**C.     Section 1981 Discrimination Claim**

Plaintiffs claim that they were discriminated against because of their race in violation of 42 U.S.C. § 1981. Section 1981 prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b) (1994). In order to successfully prevail under section 1981, a plaintiff must prove intentional or purposeful discrimination. General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1532 (10th Cir. 1995).

Plaintiffs do not present direct evidence of intentional discrimination; instead, Plaintiffs rely on circumstantial evidence to support their section 1981 claim. "A plaintiff who lacks direct evidence of racial discrimination may rely on indirect evidence of discrimination." Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999); see also Kendrick v. Penske Transp. Servs., 220 F.3d 1220, 1225 (10th Cir. 2000) (noting that "[a] plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination ((*e.g.*, oral or written statements on the part of a defendant showing a discriminatory motivation)) or indirect ((*i.e.*, circumstantial)) evidence of discrimination").

When a plaintiff's claims are based upon circumstantial evidence, summary judgment motions in section 1981 cases are governed by the well-known burden shifting provisions laid down in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Reynolds, 69 F.3d at 1533. In order to survive summary judgment on a circumstantial case, Plaintiffs must establish a prima facie case of discrimination. Id. If Plaintiffs carry that burden,  the burden then shifts to Defendants to offer a legitimate, non-discriminatory reason for their action. Id. If Defendants make such a showing, the burden then shifts back to Plaintiffs to prove that the proffered nondiscriminatory reason is pretextual, from which a jury may infer discriminatory intent. Id. Ultimately, "evidence of pretext (plus a prima facie case) is enough to avoid summary judgment for the defendant without requiring the plaintiff to present direct evidence of an illegal discriminatory motive." Id. at 1534.

**1.    Plaintiffs' Prima Facie Case of Discrimination**

In order to establish a prima facie case of race discrimination under section 1981, Plaintiffs must show: (1) the Plaintiffs are members of a protected class, (2) the Defendants had the intent to

discriminate on the basis of race, and (3) the discrimination interfered with a protected activity as defined in § 1981. Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091, 1101-02 (10th Cir. 2001); see also Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997). The Defendants claim they are entitled to summary judgment because Plaintiffs cannot establish intentional discrimination on the Defendants' part.

The first and third prongs of the Plaintiffs' prima facie case are uncontested. As for the first prong, it is not contested that the Plaintiffs, an African-American organization and its members, are members of a protected class. See English v. Colorado Dept. of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001). As for the third prong, it is not contested that the Defendants' cancellation of the Grand Ballroom interfered with a protected activity of the Plaintiffs. Section 1981 prohibits discrimination occurring "before and after the establishment of the contractual relationship." Perry, 199 F.3d at 1132.

Particularly, the Defendants argue that the second prong of the Plaintiffs' prima facie case has not been met because the Plaintiffs' circumstantial evidence is insufficient to establish intentional racial discrimination. The Court's analysis must therefore begin with whether Plaintiffs have made a sufficient showing of intent by the Defendants to discriminate on the basis of race.

The Plaintiffs' claim of race discrimination rests entirely on the Defendants' cancellation of their reservation for a New Year's Eve party at the Radisson Hotel. A hotel's isolated decision to cancel a reservation of a group of racial minorities does not necessarily indicate that the decision was racially based without additional evidence of discriminatory intent. See e.g. Kendrick, 220 F.3d at 1226 (stating that "[a]n employer's isolated decision to reject an applicant who belongs to a racial

10

minority does not show that the decision was racially based"). However, illegitimate intent can be inferred from one action in context. <u>Alexis v. McDonald's Restaurants of Massachusetts, Inc.</u>, 67 F.3d 341 (1st Cir. 1995) (security guard's statement "you people have no rights" sufficient evidence of intent where no evidence anyone else in African-American arrestee's family had committed any disorderly act).

On March 19, 1999, Plaintiffs McGee and Cardwell met with Sandra Knudsen, the catering manager of the Radisson, to discuss the terms of renting the Grand Ballroom on behalf of the AACA. At this meeting, Ms. Knudsen assured the Plaintiffs that the Grand Ballroom was available for New Year's Eve, at which time Plaintiffs appear to have agreed to book the Grand Ballroom and thirty-four sleeping rooms. During May 1999, Ms. Knudsen called Plaintiff McGee and canceled the AACA's reservation for the New Year's Eve party. Plaintiffs claim that Ms. Knudsen did not give them a reason for the cancellation other than the fact that she was following the instructions of her boss, who was angry that she had rented the Grand Ballroom to the AACA.

Although the Plaintiffs' reservation of the Grand Ballroom was canceled by the Defendants, the Grand Ballroom was ultimately left unused on New Year's Eve of 1999. When an employment position remains open following a plaintiff's rejection for that position, that fact is often used as evidence to support a plaintiff's prima facie case of race discrimination. <u>See</u> <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 797 (10th Cir. 2000); <u>see also</u> <u>Kendrick</u>, 220 F.3d at 1226. Similarly, this Court views the fact that the Grand Ballroom was left vacant subsequent to the Defendants' cancellation of the Plaintiffs' reservation of that space to be evidence of discriminatory intent on the part of the Defendants.

Therefore, Plaintiffs have met their initial burden by sufficiently establishing a prima facie case of race discrimination against the Defendants.

### 2.    Defendants' Non-Discriminatory Reason for Cancellation

Having established their prima facie case, Plaintiffs successfully shifted the burden of production to the Defendants to proffer a legitimate, non-discriminatory reason for their cancellation of the Plaintiffs' reservation of the Grand Ballroom for New Year's Eve. See English, 248 F.3d at 1009; see also Reynolds, 69 F.3d at 1533.

The Defendants proffered reason for the cancellation is that the Radisson was contemplating hosting its own party in the Grand Ballroom and would consider only private bookings that could exceed revenues generated from an in-house party. Defendants claim that the projected revenues for the AACA event were insufficient for New Year's Eve 1999. Additionally, because of high turnover in the Radisson management positions, the Radisson did not determine until October 1999 that hosting its own party would not be financially profitable. At that point, the Grand Ballroom became available for a private booking on New Year's Eve 1999; however, again due to turnover and poor business decisions, the Grand Ballroom went unused on this night.

Defendants contend that they may be guilty of taking too long to determine whether they were holding their own New Year's Eve party, but this indecisiveness does not equal race discrimination. Ultimately, the Defendants claim that the decision to cancel the AACA's reservation was purely a business decision, and had nothing to do with the racial makeup of the AACA. This Court is not in the position of deciding whether Defendants' business decision was good or bad. See Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 813-14 (10th Cir. 2000) ("[the court] must not sit as

12

a super-personnel department that second-guesses the company's business decisions, with the benefit of twenty-twenty hindsight").

Therefore, for the purposes of summary judgment, Defendants' proffered reason for canceling the AACA's reservation appears to be legitimate and non-discriminatory. The Defendants have met their burden.

### 3.   Plaintiffs' Showing of Defendants' Non-Discriminatory Reason as Pretextual

The Defendants articulated a legitimate, nondiscriminatory reason for canceling the Plaintiffs reservations; thus, the burden shifts back to the Plaintiffs to show that the Defendants' proffered reason is mere pretext, i.e., unworthy of belief. See Reynolds, 69 F.3d at 1533. If a plaintiff "presents evidence that the defendant's proffered reason for the [business] decision was pretextual . . . , the plaintiff can withstand a summary judgment motion and is entitled to go to trial." Kendrick, 220 F.3d at 1230 (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

In certain cases, "a plaintiff's prima facie case and the inferences that may be drawn therefrom themselves cast sufficient doubts on a defendant's nondiscriminatory reason to satisfy his burden of showing pretext." English, 248 F.3d at 1009; see also Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 143 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, n. 10 (1981)). In the present case, however, the Court is not required to rely solely on the Plaintiffs' prima facie case because the Plaintiffs have presented additional evidence of pretext.

In order for the Plaintiffs to sustain their burden of production on pretext, the Plaintiffs must demonstrate either that the cancellation of their reservation was (1) "more likely motivated" by discrimination than by the explanation proffered by the Defendants, or (2) the proffered explanation

was "unworthy of credence" in circumstances where the suspect denial, taken together with other facts, suggests a discriminatory motivation. Burdine, 450 U.S. at 256; see also Randle, 69 F.3d at 451-452 (indicating that plaintiff may satisfy burden of establishing pretext by showing that plaintiff is a victim of intentional discrimination or by showing the defendant's proffered explanation is "unworthy of credence").

Plaintiffs argue that they have submitted sufficient evidence for a reasonable jury to conclude that the Defendants proffered reason for canceling their New Year's Eve reservation is pretextual. First, Plaintiffs point to conflicting and inconsistent testimony in the depositions given by Ms. Knudsen, Mr. Nabos, and Ms. Rueda. The Tenth Circuit recently reaffirmed that a rational fact-finder can infer pretext from "weaknesses, inconsistencies, and contradictions" in the testimony of the defendant. O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1254 (10th Cir. 2001) (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).

Specifically, in this case, Defendants claim that Plaintiffs initially met only with Ms. Knudsen and that Mr. Nabos, Ms. Kopack, and Ms. Rueda had previously instructed the catering managers not to book a private group for New Year's Eve 1999 because the Radisson intended to use the Grand Ballroom for a large public party on New Year's Eve 1999. Regardless of this claim, Ms. Knudsen's notes from the initial meeting state that "John [Nabos] said they [sic] hotel wasn't sure what they were going to do for New Year's Eve." Ms. Knudsen's notes indirectly contradict the Defendants' claims that Mr. Nabos was not present for the initial meeting with the Plaintiffs and that he had instructed the catering managers not to book a private group for New Year's Eve 1999. Additionally, the Defendants state in their answer (Doc. 13) that the Radisson's policy was that the

14

Grand Ballroom could not be booked prior to August 1999. Nevertheless, Ms. Rueda's testimony is that the Grand Ballroom could be booked if there was sufficient revenue.[5]

A rational fact-finder could view such inconsistencies in these statements of intent by the defendants as unworthy of belief. "Judgements about intent are best left for trial and are within the province of the jury." Randle, 69 F.3d at 453; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Defendants proffered nondiscriminatory reason for canceling the Plaintiffs' reservations is that the Radisson was planning on hosting its own party on New Year's Eve 1999. However, the aforementioned inconsistencies in the Defendants' testimony allow a rational fact-finder to find the proffered explanation "unworthy of credence," thus allowing for an inference of pretext.

Furthermore, Plaintiffs claim that when Ms. Knudsen called Plaintiff McGee in May to cancel the AACA's reservation, she could not or would give an explanation for the cancellation. Initially, the Defendants did not explain to the Plaintiffs that their reservation was being canceled because the Radisson was planning on hosting its own party. Defendants proffered this nondiscriminatory reason months after the cancellation of the Plaintiffs' New Year's Eve party at their hotel. The Court views this delay in disclosure of a fully articulated nondiscriminatory reason as additional evidence of

---

[5]The Plaintiffs claim that Ms. Rueda never reviewed the financial records to determine whether the AACA New Year's Party would create sufficient revenue for the Radisson; yet, the Plaintiffs offer no facts that support this conclusory allegation. "Unsupported conclusory allegations . . . do not create a genuine issue of fact." In Re Grandote Country Club Company, L.T.D, 252 F.3d 1146, 1149 (10th Cir. 2001); see also United States v. Simons, 129 F.3d 1386, 1388-89 (10th Cir. 1997). Rather, "sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." Simons, 129 F.3d at 1389 (quoting Thomas, 968 F.2d at 1024). Therefore, because the Plaintiffs identify no evidence for the conclusory allegation that Ms. Rueda never reviewed the financial records, the Court will disregard this allegation.

pretext. See Tyler, 232 F.3d at 813 (stating "[the Court] is disquieted . . . by an employer who 'fully' articulates its reasons for the first time months after the decision was made").

Finally, when the Plaintiffs called the Radisson between May and October 1999, they were told that the Grand Ballroom was available and that no event was planned for it on New Year's Eve 1999. Furthermore, in October 1999, Ms. Ortiz was able to reserve the Grand Ballroom for a wedding on New Year's Eve 1999. Taken together with other facts, the reservation of the Grand Ballroom to a non-African-American could be viewed by a fact-finder as evidence that the cancellation of the Plaintiffs' reservation was "more likely motivated" by discrimination than by the Defendants' proffered explanation. See Burdine, 450 U.S. at 256. Ultimately, the Plaintiffs have met their burden of presenting sufficient evidence that the Defendants' proffered reasons for canceling their reservations are merely pretextual.

The Tenth Circuit has held that it would be error for this Court to grant summary judgment to the Defendants if the Plaintiffs have established a prima facie case of race discrimination and have presented evidence that the facially nondiscriminatory reasons proffered by the Defendants are pretextual. See Randle, 69 F.3d at 452 (citing Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1379-1381 (10th Cir. 1994)). Plaintiffs have created a genuine issue of material fact as to whether they were discriminated against because of their race; therefore, Defendants' motion for summary judgment on the Plaintiffs' section 1981 claim is denied.[6]

_____

[6]Defendants argue that the Plaintiffs' claim under 42 U.S.C. § 2000(a) for injunctive relief should fail because the Plaintiffs have no evidence of intentional discrimination. However, the Court has found that the Plaintiffs have made a sufficient showing of intentional discrimination to survive summary judgement on their section 1981 claim; therefore, the Defendants' motion for summary judgement on the Plaintiffs' section 2000(a) claim is also denied.

**D.      Section 1985(3) Conspiracy Claim**

The provisions of 42 U.S.C. § 1985(3) provide for a recovery of damages by a party who is injured as a result of a conspiracy to deprive any person of equal protection of the laws or of equal privileges and immunities under the laws. The essential elements of a civil rights conspiracy claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy, and (4) an injury or deprivation resulting therefrom. Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). Defendants contend that after being afforded substantial discovery Plaintiffs still have not presented facts to support the requisite "meeting of the minds" among the Defendants to establish the first element of a section 1985(3) claim--a conspiracy.[7]

A civil conspiracy requires the combination of two or more persons acting in concert. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994). Plaintiffs must establish, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." Id. (quoting Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990). More than conclusory allegations of a conspiracy are required for the Plaintiffs to establish a valid section 1983 claim. See Brever, 40 F.3d at 1126. However, the Plaintiffs are not necessarily required to prove an actual agreement among the Defendants; rather, to survive summary judgment the Plaintiffs must establish a "sequence of events" that allow a jury to infer a meeting of the minds. Id. at 1127.

---

[7]Defendants previously requested that the Plaintiffs' section 1985(3) conspiracy claim be dismissed on the grounds that the pleadings were insufficient to establish the requisite "meeting of the minds." Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 24). This Court refused to dismiss the Plaintiffs' conspiracy claim and allowed the Plaintiff the opportunity to support their conspiracy claim through discovery. Memorandum Opinion (Doc. 64).

While the sequence of events in this case clearly allow for an inference of race discrimination, these events alone cannot support an inference of conspiracy without some additional evidence. Therefore, Plaintiffs must put forth additional evidence that supports an inference of a meeting of the minds or agreement among the Defendants. Plaintiffs identify at least two separate communications between two Davidson employees concerning the cancellation of the Plaintiffs' New Year's Eve reservations.[8] These two employees were Zuly Rueda, the General Manager, and Colleen Kopack, the Director of Sales. Ms. Rueda and Ms. Kopack initially discussed the booking and decided that the hotel could not hold the AACA event, then they discussed the event again after the AACA requested that the hotel reconsider the cancellation. Defendants' contend that race was never raised as an issue in the cancellation; however, in light of the surrounding circumstances, a reasonable jury could find this contention unworthy of credence.

Defendants' motion for summary judgment on Plaintiff's section 1985(3) conspiracy claim is therefore denied.

## E.   State Contract Claim

In addition to their civil rights claims, Plaintiffs bring a pendent state law claim for breach of contract for the Defendants' cancellation of their New Year's Eve reservation. Defendants argue that as a matter of law there is insufficient evidence to support the establishment of a contract between the Plaintiffs and Defendants for the reservation of the Grand Ballroom on New Year's Eve 1999.

---

[8]Defendants previously argued that the intracorporate conspiracy doctrine bars the Plaintiffs' section 1985(3) claim because the only remaining defendants are Davidson and Davidson employees. However, this Court rejected that argument because the Tenth Circuit has held that a meeting of the minds between a corporation and its employees may constitute a conspiracy under section 1985(3). Brever, 40 F.3d at 1127.

"Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." <u>Garcia v. Middle Rio Grand Conservancy Dist.</u>, 121 N.M. 728, 731, 918 P.2d 7, 10 (N.M. 1996) (quoting <u>Hartbarger v. Frank Paxton Co.</u>, 115 N.M. 665, 669, 857 P.2d 776, 780 (1993), *cert. denied*, 510 U.S. 1118 (1994)).

Defendants claim there is insufficient evidence to support an offer and acceptance or mutual assent between the parties to establish a contract for the reservation of the Grand Ballroom. Furthermore, Defendants argue that no contract was formed between the parties because the Plaintiffs anticipated receiving a written contract before the contract was to be considered final.

### 1.    Offer and Acceptance

The Court will first address the issue of whether the Plaintiffs have submitted sufficient evidence of an offer and acceptance to survive summary judgment on their state contract claim. Ultimately, "[l]egalistic formulations of offer and acceptance are not necessary to establish an agreement sufficient to defeat a motion for summary judgment." <u>Western Bank of Santa Fe v. Biava</u>, 109 N.M. 550, 553, 787 P.2d 830, 833 (N.M. 1990). The sworn statement in the affidavit of Lovie McGee that "they agreed to book the Radisson Grand Ballroom and 34 sleeping rooms" is sufficient to survive summary judgment on this issue. <u>See id.</u> (stating "the sworn statement of a layman that he 'entered into an agreement' . . . should be–and we hold is–sufficient").

### 2.    Mutual Assent

Defendants argue that there was no mutual assent between the parties because there was no agreement to the following terms: cost per person, the cost of food, and the number of guest rooms to be used by the Plaintiffs.

19

Mutual assent between the parties is an essential element of a valid contract.  Stevenson v. Louis Dreyfus Corp., 112 N.M. 97, 99, 811 P.2d 1308, 1310 (N.M. 1991);  Trujillo v. Glen Falls Ins. Co., 88 N.M. 279, 281, 540 P.2d 209, 211 (N.M. 1975). This mutual assent "may be manifested wholly or partly by written or spoken words or by other acts or conduct." Id. at 281, 540 P.2d at 211. Also, in order for a contract to be valid the agreement must be "expressed plainly and explicitly" enough to avoid confusion as to what terms were agreed upon by the parties. Id. at 281, 540 P.2d at 211.

The failure of the parties to come to an explicit agreement on the cost per person, cost of food, and the number of guest rooms has not created confusion as to what terms the parties did agree upon. Defendants appear to have agreed to provide the Plaintiffs the following personal services: the use of the Grand Ballroom, use of rooms for the guests, and the provision of food and liquor for the New Year's Eve party. The elements not explicitly agreed upon were the terms of payment. "[W]hen two parties have bargained for one of them to provide personal services to the other but they have left the payment term to later negotiations, a court in appropriate circumstances may determine that the parties have reached an enforceable contract to provide the services for a 'reasonable' payment." Padilla v. RRA, Inc., 124 N.M. 111, 115, 946 P.2d 1122, 1125 (N.M. App. 1997). The Court finds that under the circumstances of the present case, a jury could find an enforceable contract despite the missing payment terms. Therefore, the Defendants are not entitled to summary judgement as a matter of law on this issue.

20

3.        **Anticipation of a Written Contract**

Defendants next claim that the Plaintiffs anticipated receiving a written contract before the agreement was considered final. Thus, the Defendants argue that no binding contract was formed in the absence of a writing.

The parties agree that in New Mexico, a contract does not have to be in writing to be a valid contract. See Trujillo, 88 N.M. at 281, 540 P.2d at 211. However, "[p]arties to an oral, informal agreement may or may not become bound prior to execution of a contemplated formal writing, depending upon their intention." Stites v. Yelverton, 60 N.M. 190, 193, 289 P.2d 628, 630 (N.M. 1955). Intention is a question of fact that depends on the following circumstances: (1) whether negotiations indicate a written draft was intended as the binding expression, (2) whether the contract was of a type usually put in writing, and (3) whether there was agreement upon all essential and material terms of the contract. Id. at 193, 289 P.2d at 630.

In the present case, Plaintiffs McGee and Cardwell, as representatives of the AACA, testified in their depositions that they anticipated receiving a finalized contract in writing. However, both Plaintiffs McGee and Cardwell also testified that they believed the Defendants' acceptance of their $200 deposit created a binding contract for the rental of the Grand Ballroom. This testimony indicates that there is a genuine issue of material fact as to whether negotiations indicated a written draft was intended as the binding expression.

Furthermore, Defendants have offered no evidence persuading this Court that a contract for the use of a ballroom and the use of hotel rooms is of the type that is usually put in writing. The only evidence proffered by the Defendants on this issue is the contract between the Defendants and Ms.

21

Ortiz for the rental of the Grand Ballroom. The presence of a written contract for the rental of the Grand Ballroom, though, does not automatically indicate that this is the type of contract that is usually put in writing. Finally, the Court has already determined that a reasonable jury could find that the parties formed an agreement on the essential and material terms of the contract.

In viewing the evidence in the light most favorable to the nonmoving party, summary judgment for the Defendants on this issue is inappropriate and thus denied.

## F.    AACA's Standing

Defendants argue that if this Court fails to grant summary judgment to Defendants, then the Court should in the alternative dismiss the AACA from the lawsuit for lack of associational standing. First, it is important to note that in civil rights cases a corporation that has no racial identity cannot be the direct target of alleged discrimination. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 263 (1977). However, numerous post-Arlington Heights decisions by lower courts have permitted corporations to assert section 1981 claims where the corporation, due to its ownership or management, has a minority racial identity.[9]

---

[9]See e.g Hudson Valley Freedom Theater, Inc. v. Heimbach, 671 F.2d 702 (2nd Cir.), cert. denied, 459 U.S. 857 (1982) (holding that a not-for-profit tax-exempt theater organization created to serve local black and Hispanic communities had standing to bring civil rights claims against county officials who allegedly denied the organization's funding application for racial reasons); Rosales v. AT&T Information Systems, Inc., 702 F.Supp. 1489 (D. Colo. 1988) (holding that plaintiff corporation, which claimed that it was denied dealership because principal was of Hispanic-Mexican-American descent, had standing to assert claim under section 1981, regardless of whether corporation had minority racial identity); Howard Sec. Services, Inc. v. John Hopkins Hospital, 516 F.Supp. 508 (D. Md. 1981) (holding that a corporation had right of action against hospital where corporation was apparently wholly owned and operated by its black president and hospital allegedly failed to award contract to corporation because of president's race).

The AACA is clearly composed of almost exclusively African-American members and two African-Americans acted as the principal negotiators in reserving the Grand Ballroom. The name of the organization and the composition of its members give the AACA a definite racial identity. Therefore, the AACA is not barred from asserting its civil rights claims merely because it is an organization. This conclusion, though, does not answer the ultimate question of whether the AACA has standing to assert civil rights claims in this particular case.

An association has standing to sue in federal court based either on an injury to the organization in its own right or as the representative of its members who have been injured. Warth v. Seldin, 422 U.S. 490, 511 (1975). The Plaintiffs claim that the AACA has standing to sue in federal court on its own right and is not serving as a representative of its members. An association has standing to invoke federal court jurisdiction on its own behalf if it meets standard requirements that apply to individual. Colorado Taxpayers Union, Inc. v. Romer, 963 F.2d 1394, 1396 (10th Cir. 1992). Ultimately, to satisfy the standing requirement, a plaintiff must allege (1) an injury in fact, (2) which is fairly traceable to defendant's conduct, and (3) which a favorable court decision will redress. Sac and Fox Nation of Missouri v. Pierce, 213 F.3d 566, 573 (10th Cir. 2000).

In order to satisfy the injury in fact element, the plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" Clajon Production Corp. v. Petera, 70 F.3d 1566, 1572 (10th Cir. 1995) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "At the summary judgment stage, the injury in fact element requires that the plaintiff set forth by affidavit or other evidence specific facts for which purposes of the summary judgment will be taken to be true." Id. In the present

case, the Plaintiffs set forth by affidavit that the AACA has been damaged by the loss of profits, loss of a deposit paid to Defendant, loss of a deposit paid to a D.J., loss of money paid for flyers advertising the ball and postage to mail those flyers, and loss of good will and the AACA's reputation as an organization. These damages are clearly concrete and actual; thus, sufficient to satisfy the injury in fact element for the purposes of opposing summary judgment.

As for the causation requirement, the AACA's alleged injury is directly traceable to the Defendants' cancellation of their reservation, which the Plaintiffs claim was based on illegal discriminatory intent. Finally, to satisfy the redressability requirement for constitutional standing, the AACA must show that there is at least a "'substantial likelihood' that the relief requested will redress the injury claimed . . . ." Baca v. King, 92 F.3d 1031, 1036 (10th Cir. 1996) (quoting Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 75 n. 20 (1978)). The Court finds that there is a substantial likelihood that the economic relief requested by the AACA will redress their claimed injury. See Housing Authority of the Kaw Tribe of Indians of Oklahoma v. City of Ponca City, 952 F.2d 1183, 1193 (10th Cir. 1991) (stating that the "[plaintiff's] economic injury . . . is sufficient to confer Article III standing on the [plaintiff]").

Defendants' request that the AACA be dismissed for lack of associational standing is hereby denied.

## **ORDER**

For the reasons set forth above, the Court hereby DENIES Defendants' motion for summary judgment with respect to Plaintiffs' civil rights claims pursuant to 42 U.S.C. §§ 1981 and 1985(3) and Plaintiffs' pendent state law claim for breach of contract.

IT IS SO ORDERED.

Dated at Albuquerque this 3rd of August, 2001.


BRUCE D. BLACK
United States District Judge

**ATTORNEYS:**

For Plaintiffs:
    Steven K. Sanders, Esq., Albuquerque, NM

For Defendants:
    John S. Campbell, Esq., Albuquerque, NM
    Marianne B. Hill, Esq., Albuquerque, NM
    Stephen H. Biller, Esq., Memphis, TN